1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

SHARON MARIE DEPEW,

8
                              Plaintiff,

Case No. C15-5704-RSM

9
          v.

10
CAROLYN W COLVIN, Acting Commissioner

11
of Social Security,

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

12
                              Defendant.

13

## I.      INTRODUCTION

14
          Sharon M. Depew brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

15
review of a final decision of the Commissioner of Social Security finding her disability ended as

16
of May 1, 2012 and terminating her Title II Disability Insurance Benefits.  This matter has been

17
fully briefed and, after reviewing the record in its entirety, the Court **REVERSES** the

18
Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

19
under sentence four of 42 U.S.C. § 405(g).

20

## II.      BACKGROUND

21
          In June 2007, Ms. Depew was determined to be disabled as of November 1, 2006 on the

22
grounds that she met medical listing 13.10A with a diagnosis of metastatic carcinoma consistent

23
with breast cancer.  Tr. 68, 104, 237.  In May 2012, Ms. Depew was determined to be no longer

1   disabled as of May 1, 2012 as her cancer was in remission.  Tr. 37, 62-63, 237.  This

2   determination was upheld on reconsideration after a hearing by a State Agency Disability

3   Hearing Officer.  Tr. 100-110.  Thereafter, Ms. Depew timely requested review before an

4   Administrative Law Judge ("ALJ").  Tr. 114.  On February 26, 2014, ALJ Scott R. Morris

5   conducted a hearing with Ms. Depew.  Tr. 35-50.  Mr. Barnett was represented by counsel, Todd

6   Carlisle, Vocational Expert ("VE") Steve Floyd was also present.  *Id.*  On March 27, 2014, the

7   ALJ issued a decision finding that Ms. Depew's disability had ended as of May 1, 2012.  Tr. 16-

8   28.

9                                         **III.    JURISDICTION**

10          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §

11   405(g).

12                                     **IV.    STANDARD OF REVIEW**

13          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

14   social security benefits when the ALJ's findings are based on legal error or are not supported

15   by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

16   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

17   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

18   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

19   Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

20   testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d

21   1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it

22   may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

23   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

1  more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

2  *Id.*

3        The Court may direct an award of benefits where "the record has been fully developed

4  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

5  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

6  (9th Cir. 1996)).  The Court may find that this occurs when:

7       (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
        claimant's evidence; (2) there are no outstanding issues that must be resolved

8       before a determination of disability can be made; and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled if he

9       considered the claimant's evidence.

10 *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

11 erroneously rejected evidence may be credited when all three elements are met).

12                       **V.  EVALUATING DISABILITY**

13       To determine whether or not a claimant's disability has ended, the ALJ must follow an

14 eight-step evaluation process for a Title II claim.  20 C.F.R. § 404.1594(f).  At step one, the

15 ALJ must determine whether or not the claimant is engaging in substantial gainful activity.  20

16 C.F.R. § 404.1594(f)(1).  If the claimant is engaging in substantial gainful activity the ALJ will

17 find the disability has ended, if not, the ALJ proceeds to the next step.  *Id.*  At step two, the ALJ

18 must determine whether or not the claimant has an impairment or combination of impairments

19 that meet or medically equal(s) the severity of an impairment listed in 20 C.F.R. pt. 404, subpt.

20 P, app. 1; 20 C.F.R. §§ 404.1520(d), 404.1594(f)(2).  If the claimant's impairment(s) meet(s) a

21 listing, the disability will be found to continue, if not, the ALJ will proceed to the next step.  At

22 step three the Commissioner must determine whether or not there has been any medical

23 improvement in the claimant's condition.  20 C.F.R. § 404.1594(f)(3); *see also* 20 C.F.R. §

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

404.1594(a).  Medical improvement is defined as "any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1), (f)(3).  At step four, the ALJ must determine whether or not medical improvement is related to the ability to work, "i.e., whether or not there has been an increase in the residual functional capacity."  20 C.F.R. § 404.159(f)(4).  If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, the ALJ will proceed to step five, and must consider whether or not an exception to medical improvement applies.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If there has been medical improvement and it is related to the claimant's ability to work, the ALJ skips to step six, and must determine whether or not the claimant's current impairment(s), in combination, are severe.  20 C.F.R. § 404.1594(f)(6).  If the current impairment(s) are not severe, the claimant will no longer be considered to be disabled.  *Id.*  If the impairment(s) are severe, the ALJ will proceed to step seven and must assesses the claimant's residual functional capacity and determine whether or not she can perform her past relevant work.  20 C.F.R. § 404.1594(f)(7); Social Security Ruling ("SSR") 82-61, 1982 WL 31387.  If she can perform her past work, disability will be found to have ended.  *Id.*  If she cannot perform her past relevant work, the ALJ proceeds to step eight where the burden shifts to the Commissioner to prove the claimant can perform other work in the national economy, given her age, education, residual functional capacity ("RFC") and past work experience.  20 C.F.R. § 404.1594(f)(8).  If the claimant cannot perform a significant number of other jobs, she remains disabled despite medical improvement, if she can, disability ceases.  *Id.*

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on the claimant.  20 C.F.R. § 404.1594.  A claimant is disabled under the

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

Act only if her impairments are of such severity that she is unable to do her previous work, and

cannot, considering her age, education, and work experience, engage in any other substantial

gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett*

*v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  The Commissioner must consider all

evidence without regard to prior findings and there must be substantial evidence that medical

improvement has occurred.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  Moreover, the Commissioner

views the evidence in a continuing disability review from a neutral perspective, without any

initial inference as to the existence of disability being drawn from a prior finding of disability.

42 U.S.C. §§ 423(f)(1), 1382c(a)(4).

## VI.    ALJ DECISION

Utilizing the eight-step evaluation process,[1] the ALJ found:

**Step one:**  Through May 1, 2012, the date Ms. Depew's disability ended, she did not engage in substantial gainful activity.

**Step two:** Since May 1, 2012, Ms. Depew did not have an impairment or combination of impairments which met or medically equaled the requirements of a listed impairment.[2]

**Step three:**  Medical improvement occurred as of May 1, 2012.

**Step four:**  After June 10, 2007 (the date Ms. Depew was determined to be disabled) through May 1, 2012, Ms. Depew had the following severe impairments: her breast cancer is in remission.  Thus, Ms. Depew did not continue to have the same impairments that she had on June 10, 2007, when she was determined to be disabled.  Ms. Depew's medical improvement is related to the ability to work because it resulted in an increase in her residual functional capacity.

**Step five:**  N/A.

**Step six:**  As of May 1, 2012, Ms. Depew had the following severe impairments: degenerative disc disease of the cervical spine; arthritis/degenerative joint disease of the spine; arthritis of the hands and arms; major depressive disorder.

---

[1] 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

**Residual Functional Capacity ("RFC"):**  As of May 1, 2012, Ms. Depew had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently.  She can stand/walk for six hours and sit for six hours in an eight-hour workday.  She can never climb ladders, ropes or scaffolds.  She must avoid concentrated exposure to extreme cold, vibrations and hazards such as heights or moving machinery.  She is limited to unskilled work with no public contact.

**Step seven:**  As of May 1, 2012, Ms. Depew was unable to perform past relevant work.

**Step eight:**  As of May 1, 2012, considering Ms. Depew's age, education, work experience, and residual functional capacity, she was able to perform a significant number of jobs in the national economy.

Tr. 20-35.  The Appeals Council denied Mr. Barnett's request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-6.[3]

## VII.   ISSUES ON APPEAL

Ms. Depew contends the ALJ did not properly consider the medical opinions of Christina Rasmussen, Ph.D., Debora Hughes, M.D., and State agency medical consultant John D. Gilbert, Ph.D.[4] with respect to her impairments in concentration and memory.  Dkt. 9.  Ms. Depew argues that these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of her limitations.  *Id.*  She further argues that, due to the flawed RFC, substantial evidence does not support the ALJ's finding that she is capable of performing the jobs identified by the VE.  *Id.*  Ms. Depew also argues that the Commissioner's new determination, in July 2015, that she meets Social Security disability criteria is new and material evidence requiring remand for further proceedings.  *Id.*

## VIII.   DISCUSSION

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.
[4] Ms. Depew does not specifically indicate she is challenging the ALJ's treatment of Dr. Gilbert's opinion in her Statement of Issues.  However, she raises this issue in the Discussion section in the context of arguing that the RFC is not supported by substantial evidence.  Dkt. 9 at 7-8.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

**A.      Medical Opinion Evidence**

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  *Id.*  Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing."  *Id.* at 830-31.

1.      **Christina H. Rasmussen, Ph.D., Examining Psychologist**

Dr. Rasmussen evaluated Ms. Depew in August 2012.  Tr. 767-72.  Based upon the Trailmaking test Dr. Rasmussen found that Ms. Depew had "significant and severe impairment in areas measuring visual conceptual and visuomotor tracking abilities" and "severe impairment in areas measuring cognitive flexibility."  Tr. 771.  She further indicated that Ms. Depew's "memory ability ranged from Extremely Low to Low Average with relative strengths in Visual Memory and Visual Working Memory and relative weaknesses in Auditory and Immediate Memory" and that these deficits "are consistent with Ms. Depew's report of concentration deficits."  *Id.*  Dr. Rasmussen opined that Ms. Depew "would have no difficulty carrying out one and two-step instructions" but that "based upon her memory test results, she may have difficulty understanding and carrying out complex instructions and making decisions in complex situations."  Tr. 772.

Ms. Depew argues the ALJ impermissibly ignored objective findings from Dr. Rasmussen's cognitive testing and failed to properly consider the opinion limiting her to simple one- and two-step instructions.  Dkt. 9 at 4-6.  The Court disagrees that the ALJ impermissibly

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

ignored Dr. Rasmussen's cognitive testing but agrees the ALJ failed to properly consider the opinion that she could carry out simple one and two-step instructions but "may have difficulty understanding and carrying out complex instructions and making decisions in complex situations." Tr. 772.

At the hearing the VE testified that an individual with Ms. Depew's RFC who was also unable to maintain attention and concentration for greater than 10 percent of the workday would be precluded from gainful activity. Tr. 49. Ms. Depew argues that Dr. Rasmussen's cognitive testing supports a greater than 10% deficit in her attention and concentration which, according to the VE, would preclude her employment. Dkt. 9 at 4-6. However, contrary to Ms. Depew's contention, the ALJ did not completely ignore Dr. Rasmussen's objective testing in his opinion. Tr. 22 ("Testing showed [Ms. Depew's] memory was in the extremely low to low average range, but Dr. Rasmussen indicated [her] memory may also improve with complete sobriety."). Moreover, while Dr. Rasmussen finds the objective tests consistent with Ms. Depew's report of concentration deficits, the tests themselves do not quantify or translate that deficit into a percentage. Tr. 771. Rather, as the Commissioner notes, the only functional limitation Dr. Rasmussen assessed, based on her testing and examination, was that Ms. Depew would have no difficulty carrying out simple one- and two-step instructions but may have difficulty understanding and carrying out complex instructions and making decisions in complex situations. Tr. 772. Thus, Ms. Depew fails to establish the ALJ erred in considering Dr. Rasmussen's cognitive testing.

However, the ALJ did err in implicitly disregarding, without explanation, Dr. Rasmussen's opinion that Ms. Depew could perform simple one- and two-step instructions but may have difficulty understanding and carrying out complex instructions and making decisions

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

1   in complex situations.  Tr. 772.  The ALJ indicates that he gives significant weight to Dr.

2   Rasmussen's opinion that Ms. Depew would "have no difficulty carrying out simple one- and

3   two-step instructions."  Tr. 21, 772.  However, the ALJ's RFC determination does not include a

4   limitation to simple one- and two-step instructions.  Tr. 20.  In order to disregard aspects of Dr.

5   Rasmussen's opinion, the ALJ had to provide either "clear and convincing reasons" or "specific

6   and legitimate reasons," depending on whether or not Dr. Rasmussen's opinion is contradicted.

7   *Lester*, 81 F.3d 830-31.  Here, the ALJ erred as he failed to provide any reasons for disregarding

8   this portion of Dr. Rasmussen's opinion.  *See Betts v. Colvin*, 531 Fed.Appx. 799 (9th Cir. 2013)

9   (the ALJ erred in disregarding aspects of an examining doctor's opinion, to which the ALJ gave

10   the "greatest weight," without explanation, and the ALJ's RFC assessment therefore failed to

11   fully account for limitations identified by the examining physician).

12        The Commissioner argues that the limitation in the RFC to unskilled work adequately

13   accounts for the limitations contained in Dr. Rasmussen's opinion.  Dkt. 11 at 8.  The Court

14   disagrees.  Unskilled work is defined as work that "needs little or no judgment to do simple

15   duties that can be learned on the job in a short period of time …"  20 C.F.R. § 404.1568(a).

16   Unskilled work does not, by its terms, include a limitation to simple one- and two-step

17   instructions.  *Id.*  Rather, the limitation to unskilled work and the limitation to simple one- and

18   two-step tasks involve separate vocational considerations.  *See Oxford v. Colvin*, No. 3:14-cv-

19   05390, 2015 WL 226003 (W.D.Wa. 2015) (citing *Meissel v. Barnhart*, 403 F.Supp.2d 981, 983

20   (C.D.Cal. 2005) ("As for the defendant's argument that each of the jobs the vocational expert

21   identified consists of unskilled work – and therefore that each is consistent with the ALJ's

22   limitation to one and two step tasks – '[t]he problem for' defendant … 'is that she is conflating

23   two separate vocational considerations.'").  As noted by one district court,

The [specific vocational preparation] SVP[5] level in a DOT listing indicating unskilled work does not address whether a job entails only simple, repetitive tasks.  *See, e.g. Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D.Okla. Oct. 15, 2004); *Haal v. Barnhart*, 2004 WL 1896969, at *3 (D.Me. Aug. 25, 2004).  A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties.  DOT at 1009.  A job's reasoning level[6], by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves.  As one court noted, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings.  *Hall-Grover v. Barnhart*, 2004 WL 152983, at *4 (D.Me. April 30, 2004).

*Meissel*, 403 F.Supp.2d at 983.  Unskilled work corresponds to a specific vocational preparation

(SVP) level of 1-2 while a limitation to one- and two-step tasks corresponds with a DOT, GED

Reasoning Level of 1.  SSR 00-4p, 2000 WL 1898704.  Reasoning Level 1 explicitly requires

only "the ability to carry out simple one or two-step instructions" and to "deal with standardized

situations with occasional or no variables in or from these situations encountered on the job."

DOT Appendix C.  Thus, contrary to the Commissioner's argument, the limitation to unskilled

work in the RFC does not adequately account for the limitations contained in Dr. Rasmussen's

---

[5] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'  Dictionary of Occupational Titles, Appendix C, page 1009 (4th ed. 1991).  SVP 2 means 'anything beyond a short demonstration up to and including 1 month[.]'… As SSR 00-4p, 2000 WL 1898704 at *3 provides: 'The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT. Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.'"  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, n. 4 (9th Cir. 2009).

[6] DOT job descriptions include a "General Educational Development" ('GED') definition component, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  DOT, Appendix C.  The GED component is comprised of three discrete scales: "Reasoning Development," "Math Development, and "Language Development."  *Id.*  These scales range from Level 1 (low) to Level 6 (high).  *Id.*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

1    opinion.

2        Moreover, this error was not harmless.  The jobs identified by the vocational expert

3    require a Reasoning Level of 2, which, by its terms, requires more than the ability to carry out

4    the simple one- or two-step instructions required at Reasoning Level 1.[7]  *Cf. Stubbs-Daniels v.*

5    *Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding any error in omitting limitations from the

6    RFC harmless where the jobs identified by the ALJ did not require activity in excess of the

7    opined limitation).

8        Accordingly, the Court finds the ALJ harmfully erred in evaluating Dr. Rasmussen's

9    opinion as the limitation opined is greater than that included in the RFC.  On remand the ALJ

10   should reevaluate Dr. Rasmussen's opinion that Ms. Depew is capable of simple one- and two-

11   step instructions but may have difficulty understanding and carrying out complex instructions

12   and making decisions in complex situations.  Tr. 771-72.

13                    **2.    Debra Hughes, M.D., Treating Psychiatrist**

14       Dr. Hughes was a treating psychiatrist who opined, on several occasions, that Ms.

15   Depew's memory, attention and concentration were impaired.  Tr. 797, 807.  The ALJ

16   discounted Dr. Hughes' opinion on the grounds that she cited no testing to support her opinion.

17   Tr. 23.  Ms. Depew contends the ALJ erred in rejecting the opinion as Dr. Hughes' report

18   "specifically references the findings from the August 2012 report by neuropsychologist Dr.

19   Rasmussen" and her cognitive testing results which were "consistent with [Ms. Depew's] report

20   _____

21   [7]The Commissioner acknowledges that all the jobs identified by the vocational expert require a
     DOT, GED Reasoning Level of 2.  Dkt. 11 at 6.  GED Reasoning Level 2 jobs require the
     reasoning ability to "carry out detailed but uninvolved written or oral instructions" and to "[d]eal

22   with problems involving a few concrete variables in or from standardized situations."  DOT
     Appendix C; *see Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015) (finding

23   an apparent conflict between an RFC limitation to one- and two-step tasks, and the demands of
     Level Two reasoning).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

of concentration deficits." Dkt. 9 at 6, 7; Tr. 801.  The Commissioner concedes the ALJ erred in rejecting Dr. Hughes' opinion on this basis but contends the error was harmless because "Dr. Hughes' comment that [Ms. Depew's] attention and concentration were 'impaired' was non-specific and therefore not in conflict with the ALJ's finding that [Ms. Depew] was limited to unskilled work, which requires less concentration than skilled work." Dkt. 11 at 4.  The Court agrees the ALJ erred in rejecting Dr. Hughes' opinion but disagrees that the error was harmless.

First, the ALJ did not reject Dr. Hughes' opinion as "non-specific." Dkt. 11 at 4.  Thus the Commissioner's argument amounts to an improper post-hoc rationalization which the Court cannot rely upon to affirm the ALJ's decision.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").  Second, as discussed to some extent above, a limitation to unskilled work does not necessarily address limitations in concentration, persistence and pace. *See Fleener v. Colvin*, 2015 WL 5521992 at *6 (D. Oregon Sept. 15, 2015) (A limitation in the RFC to "unskilled work with a [SVP] rating of one or two … does not address a plaintiff's limitations related to concentration, persistence, or pace or other non-exertional restrictions."); *see* DOT, Appx. C § II. ; *and see Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed. Appx. 211, 212 (9th Cir. 2009) (holding a limitation to unskilled work in the RFC insufficient where the ALJ found moderate limitations in concentration, persistence and pace, and finding the ALJ was required to include the moderate limitations in the RFC and the hypothetical provided to the vocational expert).

The Commissioner acknowledges the ALJ gave an insufficient reason for rejecting Dr. Hughes' opinion that Ms. Depew's memory, attention and concentration were impaired and the

RFC does not contain any specific limitation in this area.  Dkt. 11 at 4.  Moreover, when asked about the capacity of a person with Ms. Depew's RFC (including the limitation to unskilled work) who was also "unable to maintain attention and concentration for extended periods of time," the VE responded that if that inability exceeded 10 percent of the workday, such a person would be precluded from gainful activity.  Tr. 49.  Thus, the VE's response also indicates that the limitation to unskilled work does not necessarily address limitations in concentration, persistence, and pace.

Under the circumstances, the Court cannot confidently conclude that the ALJ's error in evaluating Dr. Hughes' opinion was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2010) (ALJ errors in social security cases are harmless if they are "inconsequential to the ultimate nondisability determination" and "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").  Accordingly, on remand, the ALJ should reevaluate Dr. Hughes' opinion with respect to Ms. Depew's impairment in concentration, attention and memory.

### 3.    John D. Gilbert, Ph.D., State Non-Examining Doctor

Ms. Depew argues the ALJ failed to properly consider the opinion of State agency medical consultant John D. Gilbert.  Dkt. 9 at 8; Tr. 643.  The Court agrees.

Dr. Gilbert conducted a consultative review and opined that Ms. Depew's ability to "maintain attention and concentration for extended periods" was "moderately impaired" and that she had the cognitive, memory and concentration, persistence and pace to perform simple, repetitive tasks.  Tr. 643.  In evaluating Ms. Depew's impairments the ALJ explicitly found that she had "no more than moderate impairments in concentration, persistence and pace" and gave

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

significant weight to Dr. Gilbert's opinion that Ms. Depew can "concentrate, persist, and pace in performing simple, repetitive tasks." Tr. 19, 25. However, the ALJ did not include these specific limitations in the RFC determination and subsequent hypothetical to the vocational expert. Rather, the only mental limitations the ALJ included in the RFC were to "unskilled work with no public contact." Tr. 20.

The Commissioner concedes that "the ALJ himself believed [Ms. Depew] had moderate restrictions in concentration, persistence and pace [and found as much]." Dkt. 11 at 5. However, the Commissioner argues that moderate restrictions in concentration, persistence and pace are "consistent with the ALJ's limitation of [Ms. Depew] to unskilled work." *Id.* The Court disagrees. As previously noted, a limitation to unskilled work, without more, is insufficient to incorporate a claimant's moderate limitations in concentration, persistence and pace, nor does it "address whether a job entails only simple, repetitive tasks." *Meissel*, 403 F.Supp.2d at 983; *see Brink*, 343 Fed. Appx. at 212 (limitation to unskilled work in the RFC insufficient where the ALJ found moderate limitations in concentration, persistence and pace); *Doty v. Astrue* 2014 WL 1269479, at *3 (D.Or. Mar. 26, 2014)("Unskilled work by itself does not adequately capture plaintiff's 'moderate limitation' with regard to concentration, persistence and pace."); *Oberg v. Colvin,* 2014 WL 3695609, at *13–14 (D.Or. July 24, 2014) ("a limitation to 'unskilled work,' without more, is insufficient to incorporate [plaintiff's] moderate limitation on concentration, persistence, or pace."); *Juarez v. Colvin,* 2014 WL 1155408, at *7 (C.D.Cal. Mar. 20, 2014) ("The ALJ's RFC determination should have included not only the limitation to unskilled work but also a moderate limitation in maintaining concentration, persistence, and pace.").

The ALJ erred in failing to give any reasons for implicitly rejecting Dr. Gilbert's opinion. *See Shafer v. Astrue*, 518 F.3d 1067, 1069–1070 (9th Cir. 2008) (noting that an ALJ's silent

1   disregard of a nonexamining physician's opinion "contravened governing regulations requiring

2   him to ... evaluate every medical opinion received" and was legal error); 20 C.F.R. §

3   404.1527(d), (f) (stating that nonexamining source opinions are medical opinions that the ALJ

4   must consider and weigh using the factors enumerated in that section); SSR 96–6p (stating that

5   an ALJ "may not ignore" state agency medical consultant opinions "and must explain the weight

6   given to these opinions in their decisions"). Here, the ALJ erred as he failed to provide any

7   reasons for disregarding the limitations contained in Dr. Gilbert's opinion. *See Betts*, 531

8   Fed.Appx. 799 (the ALJ erred in disregarding aspects of an examining doctor's opinion, to

9   which the ALJ gave the "greatest weight," without explanation, and the ALJ's RFC assessment

10  therefore failed to fully account for limitations identified by the examining physician).

11          In sum, the ALJ erred in implicitly disregarding, without explanation, Dr. Gilbert's

12  opinion that Ms. Depew's ability to "maintain attention and concentration for extended periods"

13  was "moderately impaired" and that she had the cognitive, memory and concentration,

14  persistence and pace to perform simple, repetitive tasks. Tr. 643. On remand, the ALJ should

15  reevaluate Dr. Gilbert's opinion.

16          **B.      RFC, Vocational Expert and Other Jobs**

17          "The RFC assessment must always consider and address medical source opinions. If the

18  RFC Assessment conflicts with an opinion from a medical source, the adjudicator must explain

19  why the opinion was not adopted." SSR 96-8p, at *7; *see Valentine v. Comm'r Soc. Sec. Admin.*,

20  574 F.3d 685, 690 (9th Cir. 2009). "The hypothetical an ALJ poses to a vocational expert, which

21  derives from the RFC, 'must set out all the limitations and restrictions of the particular

22  claimant.'" *Valentine*, 574 F.3d at 690. Since the ALJ failed to properly consider the medical

23  opinion evidence, the ALJ's RFC determination and hypothetical questions to the VE were also

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

1   defective.  Moreover, as previously discussed, the jobs identified by the VE all required a DOT,

2   GED Reasoning Level of 2, which exceeds the apparent limitation to simple one- and two step

3   instructions contained in Dr. Rasmussen's opinion.  *See Rounds*, 807 F.3d 996.  Accordingly,

4   substantial evidence does not support the ALJ's nondisability finding.

5          **C.      New and Material Evidence**

6          Ms. Depew argues that the Commissioner's determination in July 2015 that she met

7   Social Security disability criteria is new and material evidence requiring remand for further

8   proceedings.  Dkt. 9 at 9.  The Court disagrees.

9          42 U.S.C. 405(g) provides that "[t]he court may ... at any time order additional evidence

10  to be taken before the Commissioner of Social Security, but only upon a showing that there is

11  new evidence which is material and that there is good cause for the failure to incorporate such

12  evidence into the record in a prior proceeding."  New evidence is material when it "'bear[s]

13  directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that

14  the new evidence would have changed the outcome of the ... determination.'"  *Bruton v.*

15  *Massanari,* 268 F.3d 824, 827 (9th Cir.2001) (alterations and omission in original) (quoting *Booz*

16  *v. Sec'y of Health & Human Servs.,* 734 F.2d 1378, 1380 (9th Cir.1984)).  "In certain

17  circumstances, an award based on an onset date coming in immediate proximity to an earlier

18  denial of benefits is worthy of further administrative scrutiny to determine whether the favorable

19  event should alter the initial negative outcome on the claim."  *Luna v. Astrue*, 623 F.3d 1032 (9th

20  Cir. 2010).

21         In support of this argument Ms. Depew presents a copy of the Disability Determination

22  Explanation – Reconsideration Level, dated July 24, 2015.  Dkt. 10-1.  Review of this document

23  reveals that the new disability finding was based upon a more restrictive functional capacity with

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16

1  respect to Ms. Depew's handling capability (limited to occasional) as well as her change in age

2  category to an individual closely approaching advanced age.  *Id.* at 2, 18.  Specifically, the

3  determination notes that "light with [bilateral] occasional handling is a framework for sedentary"

4  and, therefore, the agency applied the sedentary grid rule, which, based on her age, directed a

5  finding of disability.  *Id.* at 18.

6          Ms. Depew argues that the new disability determination is new and material evidence

7  because it is based on the same *physical* impairments as the present appeal.  Dkt. 9 at 10.

8  However, Ms. Depew does not challenge the ALJ's assessment of her physical impairments in

9  her Opening Brief, but alleges error only with respect to her mental impairments.  Dkt. 9.

10  Moreover, Ms. Depew fails to demonstrate that this new evidence is material to and probative of

11  her condition as it existed during the time period that is the subject of this appeal (May 1, 2012 to

12  March 27, 2014).  In assessing Ms. Depew's hand impairments for the period spanning from

13  May 1, 2012 to March 27, 2014, the ALJ noted,

14              The claimant received steroid injections for her bilateral CMC arthritis
             and left MP arthritis in May 2012.  She reported having significant relief
15              on her right hand side.  Her sensation was intact to light touch.  She was
             able to make a fist and her hand strength was largely intact.  Her hand
16              and wrist range of motion were intact.  Her hand and wrist were stable at
             the wrist and finger joints.  There was no evidence of erythema or
17              swelling.

18  Tr. 21.  The ALJ also found that "[a]lthough Ms. Depew indicated she has difficulty using her

19  hands" she was able to ride horses and participate in jousting which "requires significant use of

20  the upper extremities."  Tr. 23.  Based on this evidence the ALJ limited Ms. Depew to light work

21  and the ability to lift/carry 20 pounds occasionally and 10 pounds frequently but did not include

22  any specific limitations on handling in the RFC.  Tr. 20.  Again, Ms. Depew does not challenge

23  this finding.  The additional limitations on handling in the new disability determination appear to

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17

1   be based on medical evidence from April 2015, a year after the ALJ's decision on the instant

2   appeal. Dkt. 10-1.  Specifically, the determination references an April 2015 report indicating

3   tenderness and swelling of the hand joints and CMC joint, limited range of motion, primary

4   localized osteoarthritis of the hands.  *Id.*  Thus, the new disability determination appears to be

5   based on medical evidence from over a year after the ALJ's decision in this case.  Absent

6   additional evidence or argument, Ms. Depew fails to establish that this new determination

7   undermines the ALJ's findings with respect to her physical impairments during the relevant time

8   period.

9           In sum, Ms. Depew fails to establish a reasonable possibility that the new disability

10  determination would have changed the outcome of the prior disability determination.  Thus, on

11  remand, the ALJ need not consider the new disability determination.

12          **D.      Scope of Remand**

13          Ms. Depew requests that this matter be reversed and remanded for further proceedings.

14  In general, the Court has discretion to remand for further proceedings or to award benefits.

15  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may remand for further

16  proceedings if enhancement of the record would be useful.  *See Harman v. Apfel*, 211 F.3d 1172,

17  1178 (9th Cir. 1990).  "Where there is conflicting evidence, and not all essential factual issues

18  have been resolved, a remand for an award of benefits is inappropriate."  *Treichler v. Comm'r of*

19  *Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

20          The Court agrees that remand for further proceedings is appropriate here as it is not clear

21  from the record that the ALJ would be required to find Ms. Depew disabled if the evidence were

22  properly considered.  There is conflicting medical evidence that must be reevaluated, reweighed

23  and resolved by the ALJ on remand.  Accordingly, it is appropriate to remand this case for

1  further administrative proceedings.

2  **CONCLUSION**

3  For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

4  case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

5  405(g).

6  On remand, the ALJ should 1) reevaluate the medical evidence including the opinions of

7  Dr. Rasmussen, Dr. Hughes and Dr. Gilbert; 3) reassess Ms. Depew's RFC; and 4) reassess Ms.

8  Depew's ability to perform past work or to perform other jobs in the national economy, with the

9  assistance of a VE as necessary.

10  DATED this 16th day of June 2016.

11

12

13  RICARDO S. MARTINEZ
   CHIEF UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 19